Cases on the calendar this morning. Two of them were submitted in the briefs and will therefore not be argued. Our first case is Express Mobile v. Facebook et al., 2023-1646. Mr. Harschman. Thank you, and may it please the Court. I want to address three errors by the Board. First, the Board applied an incorrect construction of style based on a misreading of Express Mobile's proposed construction. We argued that styles can be associated with one or more objects. They have the capability to be associated with one or more objects. As Intel v. Qualcomm makes clear, in the context of a capability, or can mean both. And so, our proposal required that styles could be associated with one object and also with more than one object. But the Board decided that it didn't matter because Lime discloses the limitation either way. So, the Board made a two-fold error. First, the Board misread our proposed construction. Our proposed construction was clearly that a style could be associated with one object or more than one object. So, Intel v. Qualcomm says that, but in addition to the ordinary meaning of our proposal, we specifically connected our proposed construction to the embodiment in the spec, and the spec has a style. I took the question to be, what if the Board was wrong about that? Didn't the Board also say it wouldn't matter? So, the Board believed that there was no dispute about the claim construction because it believed our construction allowed a style that could only be associated with one object and could not be associated with multiple objects. So, it failed to apprehend that there was a dispute because it misunderstood our construction. And there's no, and just to be clear that I understand this, and there's no basis for the Board decision that would be sufficient, you're saying, independent of that error. Yes. So, two points. So, just to be clear, what you're saying is that there is no finding by the Board that the prior teacher's style, as you're arguing, it should have understood your construction to be. Yes. And so, in Appendix 22 through 23, two points. So, the Board says our construction is satisfied where a style can only be associated with a single object. And so, that's the basis for the Board's decision. Additionally, the Board never makes a finding that a style can be associated in LeMay Web, the asserted art, with more than one object. Now, Meta argues on appeal that the style can be associated with multiple frames of an image animation. And that argument, first of all, the Board never said that. The Board, in Appendix 22 through 23, never points to the animation frames as being multiple objects. So, under your view, if we did agree with your claim construction, or at least agreed that the Board misunderstood your claim construction, there would have to be a remand? So, we believe that there would be, if the Court agreed with our claim construction that a style must be able to be associated with multiple objects, we think the Court can reverse, because the petition never argued that individual frames could be multiple objects. The patent is very clear. Right, but I thought you had indicated that Meta had made an argument here that there is actually a way of satisfying your claim construction, and why wouldn't the right thing to do to be to send it back? And you can argue, among other things, that they're wrong, but also that it wasn't in the petition. But we don't have rulings on that, do we? So, we don't have a ruling on whether, under the claim construction, the LeMay Web teaches multiple objects. We believe that it's not in the petition. Meta never argued it. This Court could reverse, but this Court could also remand. So, turning to the substance of our claim construction, in terms of ordinary meaning, the word style implies consistency across multiple things. So, for example, a style manual promotes consistency across multiple documents. An architectural style reflects consistency across different buildings. Can I ask, I was a little bit unclear, am still a little bit unclear, about what, if any, relationship there is between the two separate points. There's points that you make, it has to be separate, and it has to be something that is capable of being applied to a number of different objects, not only one. I can see how they might be something like two sides of the same coin, but I want to try to understand what that's about. That's exactly correct. So, there are two sides of the same coin, but there are also distinct requirements. Our proposed construction in Appendix 2255 was very clear that there's two pieces to this construction. So, in the prior art, you had formatting information that was embedded in a single object. If you had five objects on the page, you had to go and change, and you wanted to change, say, the font size. You had to go and change it in five different places. So, what the 168 patent does, it takes a style, it makes it a separate thing, which can be associated with multiple objects. So, on one hand, it's separate. The user in the patent can define a style, and then not define any objects, can come back later and define the objects associated with that style. But, additionally, the style can be used to control the appearance of more than one object. So, they're related but distinct. Separate? Do you mean that the user can separately identify it? So, yes. So, our proposed- It's just hard, you know, in software to think about what's separate from another thing in software. Yes. And so, the board in Meta tries to make separate kind of metaphysical, but the claim here, claim one is directed to a user interface, and it recites accepting user input to create a website that's defined in terms of objects and styles. And so, our proposed construction is that the style is defined separately from the object. So, the user can create a style, say, for example, how headings should look in a document, and then later come and define the objects, the actual heading objects. And so, that's what separate means under our construction. Can you walk through what also confuses me, which is exactly what you think that the board said about separateness, and about the one or more, not theoretically, but with specific reference to the arguments that had been made with respect to the, what, five or six line bit of code? Yes. The applet at the front and the back? If the court would please turn to appendix 2357, because I think that is, makes it very easy to see what the board is doing. So- Pages 23 to 27? Sorry, 2357. This is in the appendix. This is- For document, is it? Yes. 2357 is met as briefing below. And so, I think it makes it easier to see what the- Is this the petition or the reply? So, this is their reply document.  And so, what the petition argues is in terms of defining, the claim construction requires defining the style separately from the object. The petition argued, or meta argued below, that this applet tag, this HTML code is how the user puts the animation object, which it identified as the object on the page, and it is also in these attributes here, such as width and height, where the style is. And so, at the bottom of the page, meta says the attributes are associated with the image animation as they are part of the applet tag that defines the object. And so, the- And just to be clear, the attributes include not only width and height, but also the start time and timing points. Yes. Is all of it- Also the frame text. Does everybody agree that the applet starts at the beginning of line one and ends in line six? Yes, the slash applet. The forward slash says that. Everything within that construct. And so, what then, you know, subsequently, what meta says, and what the board said, is that animator.class, this executable code, is Java code. It's not displayed on the web page. If you looked at it, it would just be ones and zeros. It's Java code. And in fact, it's the same no matter what the animation is. It's code that, given a series of images, will create an animation. But it is a program that animates an image on the screen. So, the board said animator.class is separate. But the board never said animator.class is an object under the claim, or is defined separately. The board simply just didn't address that. It appeared to believe that animator.class could be a separate object, although it made no findings that would meet the requirements. But the board's decision seems to be based on the fact that there's this HTML code with the style, and there is at least some separate sub-piece of the animator.class. Council, is it correct that this patent expired more than five years ago? So, I don't believe this patent expired. It's a continuation of a December 1999 filing. Your Honor, this patent expired several years ago. That is correct. Oh, I see. Eleven hundred days. Eleven hundred days. That's, what, three years. Yes, I think that's correct. So, it still has expired. It has expired. We filed district court litigation against several defendants in 2017, 2018. And that's continuing. And that's continuing. It's currently stayed pending the IPRs, but there's damages going back six years. So, the court has no further questions. I'll reserve the rest of the rebuttal. We will save it for you, Ms. Keefe. Good morning, Your Honors. Heidi Keefe, representing Facebook Now Meta. I'd like to actually pick up where I think we just stopped. What I heard was, what did the board say the object was? What did the board say the styles were? So, how are they separate? I think that was a question Your Honor was asking specifically from the order. So, in the order at Appendix 18, the board found that the objects take the form of the image animations that include both the graphical images and the executable code of the Java animation applet. So, the object is the animation, which includes those images and the applet. We know that the applet, the applet basically says, go grab the executable animator class and apply these styles to it, but it does that on top of the TIFF images, 1 through 12. I'm sorry, apply the attributes not to the animator class. But to the images that are pulled in. To the image that's going to be created, yes. Right? And that makes sense, because what you're saying, and if you read Lemay and what the board found, is that what Lemay is doing is Lemay is saying, hey, I've got a Java applet that's going to act on these images. I'm going to use the attributes that are in the applet to modify those images. That's the whole point, is that you end up with a movie that has a height and a width, and you know which that is, and that it has a start time of TIFF number one, and it goes through TIFF number two, and we know to pause in between each of those. What the board relied on, therefore, was the combination of. What is your best part of the board's language for your proposition that the board identified the object as being the applet? So, on page. As opposed to the animator dot class. On appendix 18. Yeah. In particular, petitioner argues Lemay Webb. Can you just tell, I see it, in the middle of the page. Discloses objects of a plurality of webpages in the form of image animations that include both the graphical images and executable code, i.e. the animation applet to display the images in sequence. Then, when we go forward and have the board applying all of that to the actual claim limitation, the board talks about the fact that it is the applet and the images. And so, what we see, for example, on appendix 21, carrying over into appendix 22, the board says that it includes the animator class. It's referring to Lemay, and how Lemay discloses that the image files that are displayed as the animation object are separate from the HTML. So, the board is saying it's image files as well that are separate from the HTML, and the applet that's separate from the HTML. The board goes on to say, at the very bottom of that paragraph, Lemay tells you put all the image files, the class files, and your HTML file in the same directory. So, saying that these are all going to be separated out. Image files, separate from class file, separate from HTML file. So, the board is finding that, in fact, those are all separate. And that substantial evidence, therefore, absolutely supports that. As far as. So, I. Yes, please. No, no, I continue to be confused each time I try to think about this. So, what, in your view, is the object? And what, in your view, is the style that is separate from the object? So, the object is the animation files. So, the image files with the. Image files or the image produced? Image, the image files, the animation image files that go into the animation. Is it then called animator.class? Animator.class is the executable. It's the little piece of Java code. So, on looking at what we're looking at on page 21, what are you saying is the object? So, again, if you go back to 18. You just say animation. I'm not sure what you mean by that. So, the animation object, the animation object includes the image files as well as. But looking at page 21, looking at page 21, like, we've got six lines there. Are you saying all six lines are the object? No, no, no. What part is the object? No, those six lines, applet code, parameter, parameter, parameter, name. Is that what you're asking me? Yeah. In those, that is the HTML code. That is not the object. That is the style. The HTML code, and you see that here. Petitioner points to LeMay's disclosure of entering HTML code for the attributes discussed above to define the object's visual appearance for teaching the object's style. That HTML code, which is applet code animator class with a width and a height with parameters, that's the style. Because those are the attributes that are going to be applied to the object. And the object becomes the animation, which is the images and the executable code that allows those things to happen. So essentially, the HTML code, I hate to do analogies, but the best way I can think about it is the object, if you think about decorating a cake, the object is the cake itself, the animation that you want displayed, and the HTML code that we see here, these six lines, those are the style menu. Go make it three tiers high and circular and make sure that you use certain frosting on one side and certain on the other. Those are the parameters. How are you going to do this? And chocolate. Always chocolate, Your Honor. And so, that's the way we separate those two things out. And so, substantial evidence absolutely supports that these files are separated. You've got the chocolate being applied to the cake. Chocolate parameter, cake object. Geez, it's really hard enough to think about what's actually in front of us without. Which again, I'll go right back to, if you read very carefully on page 21. I took it that the other side was making an argument that the attributes, which as a group you are saying is a style, are actually part of the object. Yeah, they tried to say that, but I don't understand why. I think what they were trying to do was. Well, if you look at the six lines of code, the parameter lines, the four parameter lines seem to have all the attributes. Actually, almost all of them, then the first line are two more attributes, but it's all part of this applet. So, no. The applet is what's called, the animator class, the applet code, that says I'm going to call on that applet. The lines you see here, these six lines, that is the HTML code that is used to define what it's going to look like when the applet runs the code. And that's why what you see on page 21 is that the board is saying part of the way that we know that these things are separate is because the HTML information is passed to the applet. And that's why you have the language talking about passing to. Let me make sure that I quote that for you. It's about 10 lines from the bottom. Yes. And so, they say LeMay Web explains that you can use the pre-built Java applets on your page to create the effect by downloading the applet to your system and further shows that they are separate because it's called on to create that. But the whole notion is you can't pass something from one to another unless they're separate. And the board found that as another example of why. This is not something that's embedded. Instead, it's a set of instructions that can be used to apply to the object itself. So that it has a set of characteristics. Unfortunately, like I said with the chocolate cake, you've got the instructions on how to decorate it, and that's what you use to decorate it. That's why those are separate. And everyone agreed that those files are in fact separate. The applet is not actually contained here. It's that this is the animator class. That executable is what's going to be used to do this. That's what the HTML instructions are. So can I switch to the second piece of the construction that the other side proposed? That the style has to be capable of being used by a plurality of objects. Okay, so first off, Your Honor, that's not what the plain language one or more means. And here the word can does not mean capability. It is a passive can. It may. It may do this, or it may do that. But that's an interpretive question. So I guess I'm first interested in the answer to the question, which I discussed with your friend on the other side, what we discussed with your friend on the other side. If the board was wrong about that, is there an independent basis for nevertheless affirming the board, or does that require at least a remand? So I believe that there is an independent basis to affirm what the board did, and there is substantial evidence for that as well. On page 23 of the board's decision, at the very top, this is the second full sentence talking about LeMay, in the second half of that sentence, the board points out that LeMay web technologies are not limited to one object or particular settings for that object. Because LeMay did not limit itself to that. You could have multiple objects within its passages. Those passages are those little bits of code that would be used to, you know, bring in. And so the board did find that it was not, in fact, limited to one object or particular settings for that object. And so it can be affirmed on that basis alone, there is substantial evidence citing to the record itself. In the other event, Your Honor, as we pointed out in our red brief, if we had known that this was the way they were interpreting plain language of one or more, which I contend is a very unique and different way of looking at this, which they did not propose before, had they put that in their response, we would have been allowed to put into our reply that there are, in fact, multiple images that make up an animation file, each of which has settings applied to it. And therefore, the claim language is still met. But the language alone on page 23, where the board did say that LeMay was not limited to one or applying it to only one, does support the definition as well. So we think you can affirm on that basis alone, Your Honor. You know, when I look at what you're pointing to on page 823, I read the sentences after it. I'm not sure if I read it the same way you do. At least it's not clear to me. So I want to make that point and see what your response is, because, you know, it says LeMay provides a template with default values that can be changed. That doesn't necessarily, to me, mean that there's a finding that styles can apply to more than one object. Well, I think if you look at what was happening just before, they were trying to argue that the reason that they're not separate is because they're all just one. And so they were arguing that they can't be separate because they're just one. And the board is saying it doesn't have to be just one. The LeMay is not limited to one. So I think if you read the sentences ahead of it, it does support the fact that the board is saying that LeMay is not limited to one, that these styles can be applied to more than one thing, and that that supports that. Those paragraphs go on to also talk about the fact that you can also jigger these things to prove again that they're separated. Because if you jigger one, you're not jiggering the other. And so that's another reason to show the separation. So I think both apply, Your Honor. And if the panel has no further questions, I'll yield my time. Thank you, Counsel. We appreciate it, Your Honor. Thank you. Mr. Harsha. Thank you, Your Honors. So Judge Stoll, just to address the independent basis argument first, I think you're correct that the board at Appendix 23 is not saying that LeMay Webb teaches a style that can be associated with multiple objects. And that's clear for two reasons. So first, simply, the board doesn't say anywhere how LeMay Webb's style, the applet tag, can be associated with different objects. But more importantly, at the very end of this paragraph, what the board says is that LeMay Webb discloses that, sorry, just as this quoted passage shows that the values for the style of an object can be individually set in the 168 patent through user input, LeMay Webb discloses that a user assigns values for various parameters of an animated Java object. So what the board is saying is that the user can edit the parameters of multiple objects. And the portion of the specification that the board quotes here is very important. What you're referring to, this disclosure at Column 32, the 168 patent discloses an embodiment where styles can be associated with more than one object. And when you update the style, the changes are reflected in all associated objects. What it also discloses in the spec is that the user can set a flag in each object to override the style. And so, for example, if, you know, out of 10 headings, you only want one heading to not change in font size when you update the style, you can set a flag to do that. And so with the portion, first of all, that supports our construction because you wouldn't need to override an individual object if the style couldn't be associated with multiple objects. But in addition to that, the portion that the board is pointing to to support its position is about how flags can be individually set in each object. And stepping back, the point that counsel made about it's separate because in LeMay Web, if you jigger the settings in one object, it won't affect the other. But that's exactly why it doesn't teach the invention. The point of style in the patent is that you can have a style that can control the settings of multiple objects to provide a consistent appearance. So the whole point is that if you change the settings in the style, it will affect all of the associated objects. And what LeMay Web is teaching with its styles in the applet tag is not that. If you have three different applet tags, three different styles, you have to individually change each one. Now, countless... that you did not make your claim construction clear is kind of what I heard. And had they known that by or you meant something different, then maybe they would have taken a different approach. So I wanted you to have an opportunity to respond to that. Yes. So I think there's two points there. First, our claim construction was very clear in our response brief, which they had the opportunity to respond to at 2255. Where in the same sentence where we propose our construction of one or more objects, we say the style can be associated with one or more objects, allowing changes to the style to be automatically applied to each associated object. And in the same sentence, we refer to the embodiment and the specification, which undisputedly, I think, refers to multiple objects. And so we're very clear in the response brief. But in addition to that... Are you citing page A-2255 for your position? Yes. That's our response brief. OK. Thank you. But in addition to that, there's two more points. So in the PTAB, the parties depose each other's experts to get information about claim construction. And so before they metafiled its response brief, it had the opportunity to depose our experts. Sorry, before metafiled its reply brief. And in Appendix 2499 and 2501, our expert repeatedly says that a style is something that can be associated with multiple objects. So when you change the style, it affects multiple objects. So they had total notice of our proposed argument. I hate to do this. Can you say a word about the separateness question? Yes. And I'll try to keep this very brief. So on Appendix 18, what Council for Meta points to, there's no finding that, although the board is summarizing the arguments, there's no finding that a Animator.class and the frames are themselves objects. And in fact, what the board says, quoting Meta's petition, is Animator.class includes frames and it includes executable code. But, you know, for example, a car might include tires and it might include a steering wheel. But that doesn't mean that the steering wheel meets the requirements for the whole car. In addition to that, the patent is very clear at Figure 58 and Columns 58 through 59 that an animation object is a single object. And the frames, particularly at Columns 58 through 59, it discusses the animation frames as part of the animation object, not a separate object. And finally, Appendix 2357, the claim construction that we proposed is that objects are defined separately. The user can define a style and then later define the object. And at 2357, at the very bottom, Meta admits, concedes that the style attributes are, quote, defined, are part of the applet tag that defines the object. So there's a concession that it's not separate under our proposed construction. Judge Toronto, happy to be here. Thank you to both counselors for the case you submitted.